FILED
IN CLERKS OFFICE
2020 JUL 31 AM 10:58
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT

DISTRICT OF MASS          EASTERN DIVISION

| | |
|---|---|
| RONALD S. ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>TAKEDA PHARMACEUTICALS, U.S.A., Inc., LARRY BORSKA, and JASON BRANSKI<br><br>Defendants. | Civil Action No.: |

## COMPLAINT AND JURY DEMAND

### Introduction

1.   Plaintiff Ronald Allen ("Allen") has led a distinguished and successful career as an employment lawyer. As a result of his efforts, he was able to establish a nationwide network of contacts. In 2016, Allen joined Shire Pharmaceuticals to do for them what he had done for his firms in private practice, namely, to provide expert employment law advice. When Defendant Takeda Pharmaceuticals, U.S.A., Inc. ("Takeda") acquired Shire, Allen continued to serve as Lead Counsel for United States Employment Law, and was promoted to Senior Director due to his tireless efforts and accomplishments in 2019. Then, in 2020, Allen's supervisor, Larry Borska, decided to terminate Allen for seeking to help employers respond to the COVID-19 pandemic. Takeda termed Allen's termination as "for cause" in bad faith to deprive him of his legally guaranteed benefits, and subsequently tried to make sure nobody would work with Allen.

As a result, Allen brings the present litigation to recover amounts due to him and injunctive relief as detailed herein.

## Parties

2. Allen is an individual residing at One Donnelly Drive, Medfield, MA in Norfolk County. At all times relevant, Allen worked out of the Takeda office located at 95 Hayden Avenue, Lexington, MA in Middlesex County.

3. Takeda is a Delaware corporation with its principal place of business located at 95 Hayden Street, Lexington, Massachusetts. Takeda operates business in several locations in Massachusetts in Middlesex County.

4. Upon information and belief, Defendant Borska is an individual residing in Pennsylvania. At all times relevant of Borska was Allen's supervisor at Takeda.

5. Upon information and belief, Defendant Sequeira is an individual residing in Cambridge, Massachusetts in Suffolk County. At all times relevant of Sequeira was the President of Takeda.

## Jurisdiction and Venue

6. Subject matter jurisdiction in this Court t is appropriate as this is a civil action brought seeking damages in excess of $75,000.00 and includes a federal question.

7. Personal jurisdiction over Defendant Takeda, is appropriate as it is headquartered in Lexington, Massachusetts. At all times relevant to the instant dispute, the Plaintiff was employed by Defendant Takeda at its Middlesex County location.

8. Personal jurisdiction over Defendant Larry Borska, is appropriate as works for a corporation headquartered in Lexington Massachusetts and has had minimum contacts in the Commonwealth of Massachusetts

9. Personal jurisdiction over Defendant Jason Baranski is appropriate as works for a

corporation headquartered in Lexington Massachusetts and has had minimum contacts in the Commonwealth of Massachusetts

## Factual Allegations

10. Allen was hired by Shire in 2016 to be its Lead Counsel, US Employment.

11. Allen worked for Shire Pharmaceuticals LLC ("Shire") since February 1, 2017 as Director, Lead Counsel, U.S. Employment.

12. For many years, Allen worked almost autonomously with minimal supervision.

13. As a Shire employee, Allen terms and conditions of employment were subject to the Shire Pharmaceuticals Severance Plan ("Plan").

14. On January 9, 2019, Shire was acquired by Takeda. Upon acquisition, Takeda agreed that all legacy Shire employees who were hired prior to January 9, 2019 and continuously employed through January 9, 2021 would be eligible for severance provided that they did not terminate for "cause" and were not subject to a "disqualifying event" under the Plan.

15. Until his termination, as described below, Allen remained subject to the Plan.

16. In or around June 2019, Allen was promoted to Senior Director, Lead Counsel, US Employment.

17. Upon his promotion, Allen was given raise in compensation as follows: his new annual salary was approximately $240,000. His Short Term Incentive Performance ("STIP") Bonus was set at 30% of his annual salary. His Long Term Incentive Performance ("LTIP") Bonus was set at $100,000 per year.

18. Additionally, until his termination, upon information and belief, Allen had accrued approximately $200,000.00 in cash award and equity grants.

19. Throughout his employment with Shire and Takeda, Larry Borska ("Borska") was the immediate supervisor of Allen. His immediate supervisor was Jason Baranski ("Baranski").

20. Allen continued to work autonomously at the time of his promotion. He had infrequent meeting with Borska to discuss the work he was doing and or set priorities of work he needed to accomplish. Borska and Allen generally met, at most, one per month. Frequently, their meetings were rescheduled by Borska because he had other tasks that he considered a priority. Allen continue to self-prioritize his work and accomplish the task he felt necessary in line with his client and the business needs.

21. On or around May 8, 2020, Borska met with Allen to discuss his 2019 performance. Borska described Allen's performance for that period as "excellent." Borska did inquire about specific interactions with certain human resources employees. Allen responded to those inquiries and nothing more was discussed.

22. On May 13, 2020, Boska emailed Allen about concerns regarding certain feedback he had received from certain employees but provided no specifics.

23. For this period and three months before, Allen had been working on COVID 19 related issues include its impact on employees and how Takeda could return its manufacturing and salesforce employees back to work.

24. In the email Borska sent to Allen on May 13, 2020, Borska instructed Allen to cease all work he was doing for COVID 19 and provide "support" to Borska and another legal department colleague Susannah Henderson.

25. Allen responded "I understand."

26. The parties never spoke over the phone or discussed the matter any further.

27. Given Borska's reluctance to entertain Allen's vision for Takeda to address the the current global pandemic and its effect on the workforce, Allen decided to start an outside

4

business venture – AFT Bio. AFT Bio is in the business of helping organizations plan for return to work in the wake of COVID-19.

28. On May 14, 2020, Allen instructed unnamed outside counsel for Takeda that she should cease the direction of Allen's work efforts and directive for COVID work that he had previously conveyed to outside counsel and that she should continue all other legal advice and litigation for Takeda.

29. On or about May 14, Allen informed Borska that he planned to take vacation the following week. Allen planned to take the time to spend time with his family and assess the potential of starting a new business. Shortly thereafter, in accordance with Takeda policy, Allen reached out to Baranski and set a meeting for June 2, to discuss his future at Takeda and notify him about his outside business venture. Allen also changed his LinkedIn profile to identify himself as CEO and Founder of AFT Bio – because he had nothing to hide.

30. From May 18, 2020 to May 22, 2020 Allen was on his requested vacation.

31. On May 20, 2020, Borska asked to meet with Allen. Allen responded that he was taking the time to reflect and spend time with his family and asked Borska to speak when he returned from vacation the following week.

32. On May 22, 2020, Borska and Human Resource Business Partner Hycinth Boone met with Allen to discuss Borska's concerns. Borska again raised concerns regarding certain feedback he had received from unnamed employees but provided no specifics. Allen responded to those concerns in kind and provided other names that Borska could reach out to regarding his interactions and relationship. To Allen's knowledge, as of the date of filing of this amended complaint, that was never done.

33.     Borska then raised concerns about Allen working on COVID 19 with previously mentioned outside counsel. Allen responded that he was working on his own venture with outside counsel, on his own time and at his own expense. Indeed, Allen was on vacation during that period.

34.     Despite Allen's response, Borska informed Allen that Allen's efforts put him in "bad position" and that he felt "embarrassed"; and, given these events he could not trust Allen and had to terminate his employment.

35.     Boone informed Allen that he would receive his STIP 2019 Bonus or June 12, 2020.

36.     On May 22, 2020, Takeda terminated Allen's employment involuntarily. Borska informed Allen that he would be terminated immediately but paid until May 29, 2020.

37.     The reasons provided by Borska do not amount to reason of termination for "cause" under the Plan. Nor do they amount to "disqualifying events" under the Plan.

38.     Notwithstanding the Takeda policy permitting Allen to form an outside business venture, when Takeda discovered Allen wanted to start a new business venture, he was summarily terminated.

39.     Then, upon information and belief, Borska and/or others at Takeda reached out to those Allen sought to work with on his new business to convince them not to work with Allen. Upon information and belief, these individuals included Ellen McLaughlin, a partner at Seyfarth Shaw who worked with Allen, Former US Attorney General Eric Holder, who Allen sought to sign on as a Board Member for AFT Bio, and other partners at law firms in the Boston area who had a relationship with Allen.

30.     On May 22, 2020, Allen was not paid all compensation due to his pursuant to

Massachusetts law.

31. On May 29, 2020, Allen again was not paid all compensation due to him pursuant to Massachusetts law.

32. On May 29, 2020, Allen was due approximately $5000.00 in net wages for the pay period.

33. As of the date of this amended complaint, Allen was not paid all compensation due to him pursuant to Massachusetts law.

34. At the time of his termination, on May 22, 2020, Allen was due approximately $55,000.00 in wages under the Plan.

35. Under the Plan, Allen was due a CIC payment of approximately $73,000.00

36. At the time of his termination, Allen was due his 2019 STIP Bonus of approximately $140,000.00 under Massachusetts Law and the Plan.

37. Under the Plan, Allen was due a prorated 2020 STIP Bonus of approximately $72,000.

38. Under the Plan, Allen unvested equity and cash award payment should have been paid to him in a figure not yet determined.

39. At the time of his discharge, Allen was entitled to be paid out in full his accrued, but unused vacation time of $20,000 as required by M.G.L. c.149, § 148.

40. Under the Plan, Allen would be due 12 weeks health insurance.

41. On May 29, 2020, Allen requested a copy of his personnel file.

42. Under Massachusetts law, that personnel was due 5 days upon receipt of the request.

43. As of the date of the filing of this amended complaint, Takeda has not provided Allen with a full copy of his personnel file, including but not limited to his 2019 performance

evaluation.

44. On June 2, 2020, Allen filed a written complaint with the Massachusetts Attorney. General concerning his unpaid overtime claims pursuant to M.G.L. c. 149, § 150 and requested a right to sue letter. The Attorney General issued that right to sue letter

45. Upon acquisition, Takeda agreed that all legacy Shire employees who were hired prior to January 9, 2019 and continuously employed through January 9, 2021 would be eligible for severance provided that they did not terminate for "cause" and were not subject to a "disqualifying event" under the Plan. In other words, as a "Legacy Shire" employee, Allen was subject to a separate severance plan in the event his employment terminated – the "Legacy Shire Plan."

46. Takeda baselessly alleged the termination was "for cause" in order to avoid compensating Allen under the Legacy Shire Plan. The cause designation also resulted in a 50% reduction of Allen's Short-Term Incentive Plan ("STIP") payment. Notably, Takeda was unable to demonstrate the "cause" for which it terminated Allen.

47. Upon his promotion to Senior Director, Allen was given raise in compensation as follows: his new annual salary was approximately $240,000. His STIP payment was set at 30% of his annual salary, or $72,000. His Long Term Incentive Performance ("LTIP") payment was set at $100,000 per year.

48. Upon information and belief, the STIP payment owed to Allen is at approximately $210,000.00.

49. At the time of his termination, Allen was due approximately $55,000.00 in wages under the Legacy Shire Plan

50. At the time of his termination, Allen was due a change in control payment of approximately $73,000.00.

51. Under the Plan, Allen's unvested equity and cash award payment should have been paid

to him in a figure not yet determined.

52. Borska and others' conduct has directly impeded Allen's ability to contact certain individuals at Takeda in furtherance of AFT BIO business goals to sell return to work and second wave/pandemic plans to certain law firms associated with both Takeda and with law firms that AFT BIO has target for sales. Allen had originally set AFT law firm launch for June 5 but it has been delayed due to Takeda's conduct. Allen expects that AFT BIO will be able to sell its plan and data room information for at least $5,000,000.00 to certain law firms that will and would have attended AFT BIO's pitch to law firms, which was scheduled for July 1, 2020. See July 1 AFT Law Firm Prospectus attached hereto as "Exhibit A." Law Firm pitch prospectus.

53. Borska and other's conduct has directly impeded Allen's ability to contact certain individuals at Takeda in furtherance of AFT BIO business goals to sell return to work and second wave/pandemic strategy consulting services to pharmaceutical companies associated, including but not limited to Takeda. Allen expects to sell such at least eleven (11) separate pharmaceutical companies at a minimum of $50,000,000.00. See AFT Pharma Prospectus attached hereto as "Exhibit B."

### Claims for Relief

### Count I
### Massachusetts Wage Act Claim – Unpaid Wages

40. Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

41. The actions of the Defendant as set forth above, in failing to make payments of Allen's earned wages, are in violation of the Massachusetts Wage and Hour Laws (M.G.L. c. 149, §148 & §150).

42. As the result of Defendant's violations of Massachusetts law set forth above, Plaintiff has incurred damages in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

### Count II
### Quantum Meruit/Unjust Enrichment

43. Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

44. Allen conferred a measurable benefit upon Takeda through providing his services and expertise during the relevant time period.

45. Takeda accepted services and expenses from Allen for which a reasonable person would have expected to receive compensation.

46. Allen provided his services and expenses with the reasonable expectation of receiving his wages and contractual benefits under the Shire Legacy Plan.

47. In accepting these services without compensating or reimbursing Allen, Takeda has been unjustly enriched.

48. As the result of the Takeda's violations of Massachusetts law set forth above, Allen has incurred damages in an amount to be determined at trial.

### Count III
### Breach of Contract

49. Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

50. Allen conferred a measurable benefit upon Takeda through providing his services during the relevant time period.

51. In breach of the agreement between the parties, Takeda has to pay Allen his STIP payment and failed to provide payment to Allen under the Legacy Shire Plan.

### Count IV
### Breach of the Covenant of Good Faith and Fair Dealing

52. Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

53. Allen conferred a measurable benefit upon Takeda through providing his services during the relevant time period in accordance with his agreement to do same.

54. Defendant terminated Plaintiff on September 9th to attempt to avoid paying him the earned, due and determined bonus to which he was entitled.

55. As the result of the Defendant's breach of the agreement set forth above, Plaintiff has incurred damages in an amount to be determined at trial.

### Count V
### Disability Discrimination – G.L. c.151B

56. Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

57. Takeda terminated Allen because it perceived him to have a mental impairment.

58. As a direct and proximate result of the Takeda's unlawful conduct, Allen has suffered damages in the form of lost wages and benefits, emotional distress, and attorneys' fees and other damages to be proven at trial.

### Count VI
### Tortious Interference

59. Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

60. Borska's conduct tortuously interfered with Allen's advantageous business relations with the third parties he instructed to not work with Allen.

61. As a direct and proximate result of the Takeda's unlawful conduct, Allen has suffered damages to be proven at trial.

### Jury Trial Claim

Allen respectfully demands a jury trial on all claims raised in his Amended Complaint.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that, and moves this Court to:

(A) Determine the damages sustained by Allen as the result of Takeda's unlawful non-payment of wages and award those damages, trebled, to Allen, together with such prejudgment interest as may be allowed by law;

(B) Determine the damages sustained by Allen as the result of Takeda's breach of contract and/or unjust enrichment and award those damages to Allen, together with such prejudgment interest as may be allowed by law;

(C) Determine the damages sustained by Allen as a result of Takeda's breach of G.L. c.151B and award his costs and disbursements in this suit, including, without limitation, lost wages, reasonable attorneys' fees and any reasonable accountants' or experts' fees;

(D) Determine the damages sustained by Allen as a result of Borska and Baranski's tortious interference and all damages with such prejudgment interest as may be allowed by law;

(E) Enter a permanent injunction ordering Takeda and its employees, including but not limited to Larry Borska and Jason Baranski, henceforth to refrain from engaging in the unlawful conduct described in this Complaint and to take all necessary measures to ensure that it is at all times in compliance with such injunction; and

(F) Grant Plaintiff such other and further relief as the Court may deem just and proper.

By the attorneys for the Plaintiff,

/s Ronald S. Allen

Ronald S. Allen
BBO No: 664725
The Allen Law Firm
21 Bankers Way
Edgartown, MA 02539